Patrick N. Keegan, Esq. (SBN 167698)
pkeegan@keeganbaker.com
**KEEGAN & BAKER, LLP**
2292 Faraday Avenue, Suite 100
Carlsbad, CA 92008
Tel: (760) 929-9303
Fax: (760) 929-9260

Attorneys for Plaintiff STUDIO 1220, INC.

**UNITED STATES DISTRICT COURT**

**BY AND FOR THE NORTHERN DISTRICT OF CALIFORNIA**

STUDIO 1220, INC., a California corporation, on behalf of itself and all others similarly situated,

Plaintiff,

vs.

BANK OF AMERICA, NATIONAL ASSOCIATION, a national association; and INTRALINKS, INC., a Delaware corporation;

Defendants.

Case No.

**CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

**JURY TRIAL DEMANDED**

Plaintiff Studio 1220, Inc. (hereinafter "Plaintiff" or "Studio 1220") by its attorneys, individually and on behalf of all others similarly situated, alleges upon information and belief as follows:

1. This class action arises from Defendants' unlawful, fraudulent and unfair business acts and practices regarding their advertisement, offer, processing, approval and funding of Paycheck Protection Program ("PPP") loan applications which were false, misleading and/or had a tendency to deceive the reasonable consumer to believe that Defendants would process, approve and fund PPP loan applications in the amounts of equal to or less than $150,000 fairly and on a "first-come, first-served" basis according to U.S. Treasury guidance, when they would not, and instead, secretly prioritized prioritizing PPP loan applications of greater than $150,000 before processing PPP loan applications equal to or less than $150,000. Plaintiff and the Class (defined *infra*) are similarly situated PPP loan applicants, who were and are established California banking customers of Defendant Bank of America, National Association, who submitted PPP loan applications equal to or less than $150,000 to Defendant Bank of America, National

Association, through its loan processor, Defendant Intralinks, Inc., using its IntraLinks Exchange internet portal, and who did not receive approval and funding of a PPP loan from Defendants.  Rather than processing PPP loan applications submitted by Plaintiff and the Class on a first-come, first-served basis as required by the rules governing that PPP program, Defendants prioritized loan applications seeking higher loan amounts and did not approve and fund Plaintiff's and the Class' PPP loan applications because processing the PPP loan applications of greater than $150,000 first would and did generate larger loan origination fees for Defendants.  As a result of Defendants' dishonest and deplorable behavior, thousands of small businesses that were entitled to loans under the PPP program were left without PPP loan approval and funding because Defendants chose to maximize their loan origination fees rather than comply with the rules of the PPP program and serve the needs of the bank's small business customers.

2.      Accordingly, Plaintiff, for itself and the Class, alleges violations of Business & Professions Code §§ 17200 *et seq.* and common law by Defendants, and seeks actual damages, compensatory damages, including the loss of use of unfunded PPP loan amounts during the time of when their PPP loan applications are not funded, punitive damages, and the expenses of this litigation, including reasonable attorneys' fees and costs, and injunctive relief, due to Defendants' violations.

## JURISDICTION AND VENUE

3.      Although Plaintiff does not, as yet, know the exact size of the Class (defined *infra*), based upon the size and nature of Defendants' businesses, Plaintiff believes that this Court has diversity subject-matter jurisdiction over this class action pursuant to the Class Action Fairness Act of 2005 (CAFA), 28 U.S.C. § 1332(d), since (1) the Class has 100 or more members; (2) the aggregate claim of the alleged Class exceeds $5 million, exclusive of interest and costs; and (3) at least one member of the alleged Class is a citizen of a state different from one of the Defendants.

4.      This Court also has personal jurisdiction over the parties because Plaintiff submits to the jurisdiction of the Court; Plaintiff is informed and believes that Defendant Bank of America, National Association (hereinafter "Bank of America"), at all times mentioned herein has maintained a regional headquarters in San Francisco, California, has transacted business in this judicial district, in the County of San Francisco and in the State of California; Plaintiff is informed and believes that Defendant Intralinks, Inc. (hereinafter "Intralinks"), at all times mentioned herein has maintained a principal office in San Francisco,

California, has transacted business in this judicial district, in the County of San Francisco and in the State of California. Moreover, by doing business in this judicial district and committing the statutory violations alleged herein in this judicial district, Bank of America's and Intralinks' conduct has had an adverse effect upon the finances of residents of this judicial district.

5. Venue is proper in this District pursuant to 28 U.S.C. §1391(a) and (c) because Bank of America, as a national association, and Intralinks, as a corporation, are "deemed to reside in any judicial district in which [they are] subject to personal jurisdiction," and because the alleged acts giving rise to the statutory violations alleged herein arose in this judicial district. Further, Plaintiff is informed and believes that Defendant Bank of America keeps and maintains a regional headquarters in San Francisco, California; and Defendant Intralinks keeps and maintains a principal office in San Francisco, California.

## PARTIES

### A. PLAINTIFF

6. Plaintiff Studio 1220, Inc. (hereinafter "Plaintiff" or "Studio 1220") is a California corporation with its principal executive office in the State of California in San Diego, California, and is licensed to do business in the State of California. Further, at all relevant times hereto, Studio 1220 does and has done business in California and in this judicial district, and keeps a principal business office in Del Mar, California. Plaintiff meets the criteria for approval and funding under the PPP, who in reliance of Defendants' false and deceptive advertising, marketing, and loan application processing schemes, made a application equal to or less than $150,000 for loan assistance through the PPP with Bank of America through IntraLinks Exchange.

### B. DEFENDANTS

7. Defendant Bank of America, National Association (hereinafter "Bank of America") is a National Association, registered in Delaware, with its principal place of business located in Charlotte, North Carolina and is licensed to do business in the State of California. Further, at all relevant times hereto, Bank of America does and has done business in California and in this judicial district and Plaintiff is informed and believes that Bank of America keeps a regional headquarters at 555 California Street, San Francisco, California. In a press release published on May 4, 2020, Bank of America boasted that "The company provides unmatched convenience in the United States, serving approximately 66 million consumer and small

business clients with approximately 4,300 retail financial centers, including approximately 3,000 lending centers, 2,700 financial centers with a Consumer Investment Financial Solutions Advisor and approximately 2,100 business centers; approximately 16,900 ATMs; and award-winning digital banking with approximately 39 million active users, including approximately 30 million mobile users. " As stated in a April 6, 2020 email sent to Plaintiff and the Class, "Bank of America is working with IntraLinks Exchange to gather your documents."

8. Defendant Intralinks, Inc., is a Delaware corporation, with its principal place of business located in New York, New York, and is licensed to do business in the State of California. Further, at all relevant times hereto, Intralinks, Inc. does and has done business in California and in this judicial district and Plaintiff is informed and believes that Intralinks, Inc. keeps a principal office in the State of California at 580 California, 2nd Floor, San Francisco, California. As stated on its website, "Intralinks is a cloud-based financial technology provider for global banking, dealmaking and capital markets." At all relevant times, Intralinks maintained, configured and operated IntraLinks Exchange used by Bank of America to *inter alia* "gather [] documents" from Plaintiff and the Class.

9. When in this Complaint reference is made to any act of any Defendant, such shall be deemed to mean that officers, directors, agents, employees, or representatives of the Defendant named in this lawsuit committed or authorized such acts, or failed and omitted to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation or control of the affairs of the Defendant and did so while acting within the scope of their employment or agency.

## CLASS ACTION ALLEGATIONS

10. This action has been brought and may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure because the proposed class is numerous and there is a well-defined community of interest in the litigation, as described further below.

11. Plaintiff brings this action on behalf of itself and all other persons similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure. Without prejudice to later revision, the class which Plaintiff seeks to represent are composed of:

> All PERSONS who applied for the federal Paycheck Protection Program (PPP) to Bank of America beginning on Friday, April 3, 2020 by submitting a PPP application in an amount equal to or less than $150,000.00 at www.bankofamerica.com/SBResources and who (i) had a pre-existing business

lending (either a Business Credit Card, line of credit or loan) and business deposit relationship with Bank of America, as of February 15, 2020; (ii) received confirmation of submitting an application for a PPP loan to Bank of America either online via IntraLinks Exchange or by email from "Bank of America" <welcome@intralinks.com>; and (iii) did not receive approval and funding of a PPP loan from Bank of America.

"PERSONS" shall include every "person," as defined in the California Evidence Code § 175, which includes a natural person, firm, association, organization, partnership, business trust, corporation, limited liability company, or public entity, who are citizens of California, incorporated or formed in California, or who are registered with the Secretary of State to do business in California. Defendants, any "affiliate," "principal" or "subsidiary" of Defendants, as defined in the California Corporations Code §§ 150, 175, and 189, respectively, and the employees, officers, directors, and agents thereof, are excluded from the Class. Members of the Class described above will be referred to as "class members." Plaintiff reserves the right under Rule 23 to amend or modify the Class definition and Class Period with greater particularity or further division into subclasses or limitation to particular issues as warranted, and as additional facts are discovered by Plaintiff during its future investigations.

12. Numerosity: This action is properly maintainable as a class action. Although Plaintiff does not, as yet, know the exact size of the Class, based upon the size and nature of the Bank of America's business, Plaintiff believes that there are numerous Class members, and that Class members are geographically dispersed throughout California. Thus, the Class is sufficiently numerous to make joinder impracticable, if not completely impossible. The disposition of the claims of the members of Class through this class action will benefit both the parties and this Court. In addition, the Class is readily identifiable from information and records in the possession of Bank of America and Intralinks, and the Class is defined in objective terms that make the eventual identification of Class members possible, i.e. the Class definition is sufficient to allow members of the Class to identify themselves as having a right to recover.

13. Commonality: There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. The questions of law and fact to each class and subclass predominate over questions which may affect individual class and subclass members, including the following:

(i) Did Defendants comply with all applicable SBA Regulations in processing applications for PPP funds and in distributing PPP funds in California?

(ii) Did Defendants comply with their legal obligations under the terms of the CARES Act as third party intermediary administrators of the PPP funds?

(iii) Did Defendants have a policy and/or practice of prioritizing large PPP loans to larger businesses to the detriment of the putative class?

(iv) Did Defendants process PPP loan applications on a "first-come, first-served" basis?"

(v) Did Defendants process applications in the order received, or did large PPP loans get moved "to the front of the line?"

(vi) Did Defendants prioritize maximizing origination fees over achieving the goals of the CARES Act and the PPP?

(vii) Did Defendants' conduct constitute an "unlawful business practice" under California Business & Professions Code §§ 17200, et seq.?

(viii) Did Defendants' conduct constitute a "fraudulent business practice" under California Business & Professions Code §§ 17200, et seq.?

(ix) Did Defendants' conduct constitute an "unfair business practice" under California Business & Professions Code §§ 17200, et seq.?

(x) Is Plaintiff entitled to injunctive relief; and

(xi) Are Defendants liable for attorney fees and costs.

14. Typicality: Plaintiff's claims are typical of, and are not antagonistic to, the claims of all Class members. Plaintiff and the Class members' claims for damages and injunctive relief arise from and were caused by Defendants' unfair, unlawful, and fraudulent PPP loan application and funding practices, as alleged herein, i.e., Defendants' failure to process, approve and fund their PPP loan applications. The factual and legal bases of Defendants' liability to Plaintiff and each Class member are substantially similar, resulting in injury to Plaintiffs and each Class Member as a result of Defendants' actions as described herein.

15. Adequacy: Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has no interest that is contrary to or in conflict with those members of the Class it seeks to represent. Furthermore, Plaintiff has retained counsel experienced and competent in the prosecution of complex class action litigation involving the violations alleged herein to further ensure such protection and Plaintiff intends to prosecute this action vigorously. Neither Plaintiff nor its counsel has any interest adverse to other Class

members.

16. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class and would lead to repetitious trials of the numerous common questions of fact and law. Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action. As a result, a class action is far superior to other available methods for the fair and efficient adjudication of this controversy.

17. Superiority: The nature of this action and the nature of laws available to Plaintiff and the members of Class make the use of the class action format a particularly efficient and appropriate procedure to afford relief to Plaintiff and Class for the claims alleged and the disposition of whose claims in a class action will provide substantial benefits to both the parties and the Court because:

(i) Questions of law and fact common to the Class predominate over questions which may affect individual members of the Class;

(ii) If each member of the Class were required to file an individual lawsuit, the Defendants would necessarily gain an unconscionable advantage since they would be able to exploit and overwhelm the limited resources of each individual member of the Class with its vastly superior financial and legal resources;

(v) The costs of individual suits could unreasonably consume the amounts that would be recovered;

(iv) Proof of a common business practice or factual pattern which Plaintiff experienced is representative of that experienced by the Class and will establish the right of each of the members to recover on the causes of action alleged;

(v) Individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation; and

(vi) The disposition of the claims of the members of Class through this class action will produce salutary by-products, including a therapeutic effect upon those who indulge in fraudulent practices, and aid to legitimate business enterprises by curtailing illegitimate competition.

18. Notice to the members of the Class may be made by e-mail or first-class mail addressed to

all persons who have been individually identified by Defendants through access to Defendants' records. Alternatively, if Defendants cannot produce a list of Class members' names and e-mail or mailing addresses, the members of the Class may be notified by publication in the appropriate media outlets, and by posting notices in Defendants' places of business.

19. Plaintiff and the Class have suffered irreparable harm and damages as a result of Defendants' wrongful conduct as alleged herein. Absent a representative action, Plaintiff and the Class will continue to suffer losses, thereby allowing these violations of law to proceed without remedy, and allowing Defendants to retain the proceeds of their ill-gotten gains.

20. In addition, Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

## COMMON FACTUAL ALLEGATIONS

21. On March 11, 2020, the COVID-19 outbreak was characterized as a pandemic by the World Health Organization (WHO). On March 19, 2020, Governor Gavin Newsom issued an executive Stay at Home Order in the State of California in order to slow the spread of COVID-19.[1]

22. Small businesses are the backbone of the American economy. Indeed, more than half of the people that work in America work for a small business.[2] These businesses and their employees have been hit hard due to the global COVD-19 pandemic.

23. On March 25, 2020, in response to the economic fallout of the COVID-19 crisis, the United States Senate passed the Coronavirus Aid, Relief, and Economic Security Act, also known as the CARES Act. The CARES Act passed the House the next day and was signed into law by President Trump on March 27, 2020. The legislation included $377 billion in federally guaranteed loans to small businesses and established a $500 billion government lending program for distressed companies. Unprecedented in size and scope, the legislation was the largest-ever economic stimulus package in U.S. history, amounting to 10% of the total U.S. gross domestic product.

---

[1] (https://www.gov.ca.gov/2020/03/19/governor-gavin-newsom-issues-stay-at-home-order/).

[2] (Moffatt, Mike. "Small Business in the United States." ThoughtCo, Feb. 11, 2020, thoughtco.com/intro-to-small-business-in-the-united-states-1147915.)

24. As part of the CARES Act, the Paycheck Protection Program ("PPP") authorizes up to $349 billion in forgivable loans to small businesses to pay their employees during the COVID-19 crisis. As further set forth in the "Paycheck Protection Program (PPP) Information Sheet," the United States Department of the Treasury represented that "***All loan terms will be the same for everyone***. The loan amounts will be forgiven as long as:

- The loan proceeds are used to cover payroll costs, and most mortgage interest, rent, and utility costs over the 8 week period after the loan is made; and
- Employee and compensation levels are maintained."[3]

As further set forth in the "PPP – Overview," the United States Department of the Treasury instructed, "Starting April 3, 2020, small businesses and sole proprietorships can apply. Starting April 10, 2020, independent contractors and self-employed individuals can apply. We encourage you to apply as quickly as you can because there is a funding cap." As further set forth in the "Paycheck Protection Program (PPP) Information Sheet," the United States Department of the Treasury instructed, "Although the program is open until June 30, 2020, we encourage you to apply as quickly as you can because there is a funding cap and lenders need time to process your loan." One of the most important aspects of the PPP loans is that the terms provide criteria for loan forgiveness through a process that incentivizes employers to retain, and not "lay off", employees during the COVID-19 crisis by providing, "You will owe money when your loan is due if you use the loan amount for anything other than payroll costs, mortgage interest, rent, and utilities payments over the 8 weeks after getting the loan. You will also owe money if you do not maintain your staff and payroll.

- Number of Staff: Your loan forgiveness will be reduced if you decrease your full-time employee headcount.
- Level of Payroll: Your loan forgiveness will also be reduced if you decrease salaries and wages by more than 25% for any employee that made less than $100,000 annualized in 2019.
- Re-Hiring: You have until June 30, 2020 to restore your full-time employment and salary levels for any changes made between February 15, 2020 and April 26, 2020."

25. It was the express intent of the U.S. Senate and Congress in passing the CARES Act that the funds be used to support small businesses.[4] The text of the Bill itself provides "It is the sense of the Senate

[3] (https://home.treasury.gov/system/files/136/PPP--Fact-Sheet.pdf).

[4] H.R.748(P)(iv) - CARES Act.

that the Administrator should issue guidance to lenders and agents to ensure that the processing and disbursement of covered loans prioritizes small business concerns and entities in underserved and rural markets, including veterans and members of the military community, small business concerns owned and controlled by socially and economically disadvantaged individuals (as defined in section 8(d)(3)(C)), women, and businesses in operation for less than 2 years."

26. At President Trump's signing of the CARES Act, ranking member of the House Small Business Committee Representative Steve Chabot (R-Ohio) praised the legislation as giving small businesses a great chance to reopen.[5] Senator Marco Rubio (R-Fl), Chairman of the Senate Small Business and Entrepreneurship stated that the "bipartisan small business package…will provide emergency relief so that millions of American workers can keep their jobs and millions of small businesses can stay open."[6] Senate Majority Whip, Senator John Thune (R-SD) stated that the funds provided by the CARES Act "will deliver relief to small businesses to help them and their workers weather this storm."[7]

27. Bank of America communicated to the public that it intended to follow the law and direct the PPP funds to the small businesses that Congress and the Senate intended to help. Bank of America, on its website and by email, represented to its customers that it will "process your loan application with the Small Business Administration as quickly as possible."[8]

28. The United States Department of the Treasury announced that starting April 3, 2020, small businesses and sole proprietorships could apply for and receive loans to cover their payroll and other certain expenses through existing Small Business Administration ("SBA") lenders, and that starting April 10, 2020, independent contractors and self-employed individuals could apply.[9]

29. Within this context, Bank of America served as an intermediary between small businesses

---

[5] Remarks by President Trump at Signing of H.r.748, the Cares Act, 2020 WL 1485787, at *67.

[6] (Sen. Rubio, Press Release, 03/25/2020 https://www.rubio.senate.gov/public/index.cfm /pressreleases?ContentRecord_id=D08E8A75-546A-4C56-A890-B948048E9B5C).

[7] (Sen. Thune, Press Release, 03/25/2020 https://www.thune.senate.gov/public/index.cfm/pressreleases?ID=CA914CF0-5C3D-4A02-B6F2-84925B5467BD).

[8] (https://about.bankofamerica.com/promo/assistance/faqs/small-business-paycheck-protectionprogram).

[9] (https://home.treasury.gov/system/files/136/PPP--Fact-Sheet.pdf).

and federal funds. Not only did Bank of America encourage Plaintiff and the Class, Bank of America encouraged Plaintiff and the Class to act fast.

30. Time was of the essence. The SBA regulations that govern the PPP mandated that the funds be distributed "first come, first served."[10] There was a line, a "queue." If you applied sooner rather than later, according to the SBA regulations, your place in line should have been considered, and your loans issued accordingly, "first-come, first-served." However, in contravention with its implied and explicit representations, and their own representations to Plaintiff and the Class, as well to the public, this was not how Defendants operated.

31. The terms of the PPP loans only allow for each small business borrower to obtain a single SBA backed loan through the PPP. The SBA Regulations provide: "The Administrator, in consultation with the Secretary, determined that no eligible borrower may receive more than one PPP loan. This means that if you apply for a PPP loan you should consider applying for the maximum amount."[11]

32. Data reported by the SBA for all lenders reveals that, rather than processing PPP loan applications on a "first come, first served" basis as required, lenders prioritized or front-loaded applications with higher loan amounts. This is shown by comparing data from loans processed between April 3, 2020 (when the SBA first started approving PPP loans) and April 13th versus data between April 13th and April 16th (the day when it was reported that PPP had first been depleted[12]).

/ / /

/ / /

/ / /

/ / /

---

[10] Small Business Administration Interim Final Rule § m. [Docket No. SBA-2020-0015] 13 CFR Part 120 Business Loan Program Temporary Changes; Paycheck Protection Program RIN 3245-AH34.

[11] *Id.* at § *k*.

[12] "The $349 billion Paycheck Protection Program was completely depleted after just 13 days in operation." (https://www.pbs.org/newshour/politics/it-took-13-days-for-the-paycheck-protection-program-to-run-out-of-money-what-comes-next). See also (https://www.cbsnews.com/news/paycheck-protection-program-out-of-money-small-businesses-shut-out/).

33. A breakdown of the loans processed through April 13, 2020 shows[13]:

| Loan Size | Approved Loans (#) | Approved Loans ($) | Percentage (%) of Total Number | Percentage (%) of Amount |
|---|---|---|---|---|
| ≤$150,000 | 725,058 | 37,178,984,187 | 70.05 | 15.02 |
| >$150,000 to $350,000 | 156,590 | 35,735,615,983 | 15.13 | 14.44 |
| >$350,000 to $1M | 102,473 | 59,291,602,643 | 9.90 | 23.95 |
| >$1M to $2M | 31,176 | 43,278,883,532 | 3.01 | 17.48 |
| >$2M to $5M | 16,516 | 49,288,997,593 | 1.60 | 19.91 |
| >$5M | 3,273 | 22,769,309,582 | 0.32 | 9.20 |

34. A breakdown of the loans processed through April 16, 2020, as updated from April 13, 2020[14] shows that lenders prioritized PPP applications with higher loan amounts, with loans of more than $2 million accounting for 1.57% of total loans, but 27.82% of the total pool of money:

| Loan Size ($) | Approved Loans (#) | Approved Loans ($) | Percentage (%) of Total Number | Percentage (%) of Amount |
|---|---|---|---|---|
| ≤$150,000 | 1,229,893 | $58,321,791,761 | 74.03 | 17.04 |
| >$150,000 to $350,000 | 224,061 | $50,926,354,675 | 13.49 | 14.88 |
| >$350,000 to $1M | 140,197 | $80,628,410,796 | 8.44 | 23.56 |
| >$1M to $2M | 41,238 | $57,187,983,464 | 2.48 | 16.71 |
| >$2M to $5M | 21,566 | $64,315,474,825 | 1.30 | 18.79 |
| >$5M | 4,412 | $30,897,983,582 | 0.27 | 9.03 |

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

[13] (https://www.sba.gov/sites/default/files/2020-04/PPP%20Report%20SBA%204.14.20%20%20-%20%20Read-Only.pdf).

[14] (https://www.sba.gov/sites/default/files/2020-04/PPP%20Deck%20copy.pdf).

35. Further, comparing the April 13 data to the April 16 data shows that-in the last three days of the PPP-lenders processed loan applications for $150,000 and under at twice the rate of larger loans:

| | April 13, 2020 | April 16, 2020 | |
|---|---|---|---|
| Loan Size | Approved Loans (#) | Approved Loans (#) | Percentage (%) of Change |
| ≤$150,000 | 725,058 | 1,229,893 | 70 |
| >$150,000 to $350,000 | 156,590 | 224,061 | 43 |
| >$350,000 to $1M | 102,473 | 140,197 | 37 |
| >$1M to $2M | 31,176 | 41,238 | 32 |
| >$2M to $5M | 16,516 | 21,566 | 31 |
| >$5M | 3,273 | 4,412 | 35 |

36. Thus, this SBA data demonstrates the front-loading of PPP applications for the largest amounts because, if applications were being randomly processed on a first-come, first-served basis by lenders according to U.S. Treasury guidance, the percentage change of applications submitted in the last three days of the PPP program would be consistent among all application types.

37. Importantly, while the April 16 data reported that the "Overall average loan size is $206K," the April 16 data also demonstrates that Defendants were prioritize PPP applications for the largest amounts because the April 16 data reported that the average size of approved loans originated from the top ten PPP lenders with highest approved dollars, such as Bank of America, was $339,707, or 54% higher than all PPP lenders, by reporting the following:

| PPP Lenders – Highest Approved Dollars | | | |
|---|---|---|---|
| Lender | Approved Loans (#) | Approved Dollars ($) | Average Approved Size ($) |
| 1 | 27,307 | $14,071,396,427 | $515,304 |
| 2 | 32,097 | $10,309,843,746 | $321,209 |
| 3 | 21,062 | $9,612,090,368 | $456,371 |
| 4 | 33,594 | $7,778,303,458 | $231,538 |
| 5 | 27,929 | $6,555,028,971 | $234,703 |
| 6 | 25,820 | $6,114,676,731 | $236,819 |
| 7 | 26,238 | $6,057,787,355 | $230,878 |

| | | | |
|---|---|---|---|
| 8 | 10,681 | $4,406,088,115 | $412,516 |
| 9 | 14,215 | $4,356,840,783 | $306,496 |
| 10 | 9,457 | $4,267,336,254 | $451,236 |

38. Defendants received thousands of PPP applications of different amounts and chose to prioritize loans for larger amounts, rather than processing all applications on a first-come, first-served basis because processing PPP applications for larger amounts first resulted in larger origination fees for the Defendants. Additionally, Defendants chose to prioritize PPP loans for larger amounts, rather than processing all applications on a first-come, first-served basis in order to protect its larger borrower customers from defaulting on their other loans with Bank of America.

39. Specifically, Bank of America was entitled under the PPP to receive loan origination fees of 5% on loans up to $350,000; 3% on loans between $350,000 and $2 million; and 1% on loans between $2 million and $10 million.[15] That means that Bank of America could make up to $7,500 for processing loans up to $150,000; $17,500 for processing loans up to $350,000; up to $60,000 for processing loans between $350,000 and $2 million; and up to $100,000 for processing loans between $2 million and $10 million.

40. Because of the limited amount of fund available under the PPP and the number of Bank of America customers that had a pre-existing business lending (either a Business Credit Card, line of credit or loan) and business deposit relationship with Bank of America, as of February 15, 2020, Bank of America knew that it and Intralinks would be unable to process, approve and fund every one of the PPP loan applications that it and Intralinks anticipated they would receive. However, Defendants concealed such facts from Plaintiff and the Class, as well as the general public, and additionally concealed from Plaintiff and the Class, as well as the general public, their plan to prioritizing the processing PPP applications for larger amounts first that they would and did received to maximize profits for the Bank of America and Intralinks.

41. In fact, Intralinks boasted about its operational capacity to prioritize the PPP loan applications for larger amounts by representing, on its website, e.g., that,

- "We innovate to enhance the value, speed and confidentiality of dealmaking, reporting and communications - driving success for our users. Our dedicated team empowers clients to leverage our technology with complete control and confidence."

[15] (https://home.treasury.gov/system/files/136/PPP%20Lender%20Information%20Fact%20Sheet.pdf).

- We created in "2017 - Industry first context-aware large-scale Wealth Management AI reporting solution."

42.    In order to conceal from Plaintiff and the Class, as well as the general public, the fact that Defendants were prioritizing those PPP applications for larger amounts first that would earn them the highest origination fees rather than processing PPP loan applications on a "first come, first served" basis as required by U.S. Treasury guidance, Bank of America, on its website, and in emails sent to Plaintiff and the Class beginning on April 3, 2020, made the following representations:

- "we will follow the intent of the U.S. Treasury guidance, including what has been posted at the U.S. Treasury website, that small businesses that plan to apply should do so with their current business loan provider."

- "We will contact you with next steps and to collect any required documents. Do not proactively deliver or send documents to our Financial Centers or banking teams."

- we required and Plaintiff and the Class qualified because "Small Business clients with a business lending and a business deposit relationship at Bank of America [are] eligible to apply for the Paycheck Protection Program through our bank."

- we required and Plaintiff and the Class qualified because by having "a pre-existing business lending and business deposit relationship with Bank of America, as of February 15, 2020." In fact, Bank of America CEO Brian Moynihan told CNBC on April 6, 2020, that the bank would focus on "borrowing clients" before turning to other small business customers and new clients, "We have to focus on the borrowing clients to make sure we can take care of them."

- Plaintiff's and the Class' submission of a PPP loan application to Bank of America "[would be] the best and fastest method for applying for federal relief, based on the U.S. Treasury requirements and guidance."

- we required and Plaintiff and the Class qualified because they were "Clients with existing relationships have the established accounts and underwriting verifications in place [that would] allow Bank of America to help provide the quickest access to the relief funds ...."

- we required and Plaintiff and the Class qualified because "At Bank of America, the federal Paycheck Protection Program will be administered online only."

- we required and Plaintiff and the Class qualified because "Apply for the federal Paycheck Protection Program at www.bankofamerica.com/SBResources beginning on Friday, April 3rd."

- we required and Plaintiff and the Class qualified because "Bank of America is working with IntraLinks Exchange to gather your documents. That is our standard process, and we are using it to expedite this Small Business Administration program."

- we required and Plaintiff and the Class qualified because "Once you've uploaded the required information, Bank of America will begin processing your application so we can submit it to the Small Business Administration for approval."

43.    Bank of America's representations were false, misleading and/or had a tendency to deceive the reasonable consumer because:

- Bank of America did not "follow the intent of the U.S. Treasury guidance, including what has been posted at the U.S. Treasury website," and instead failed to disclose that Defendants would not process, approve and fund PPP loan applications on a "first-come, first-served" based on U.S. Treasury guidance, and failed to disclose that the PPP loan applications of less than $150,000 would be processed, approved and funded behind Defendants' large borrower applications.

- By stating "Do not proactively deliver or send documents to our Financial Centers or banking teams," Bank of America failed to disclose that Defendants were prioritizing PPP loan applications of greater than $150,000 by allowing others to "deliver or send documents to our Financial Centers or banking teams" for faster PPP loan processing before processing the PPP loan applications of Plaintiff and the Class.

- By stating "Do not proactively deliver or send documents to our Financial Centers or banking teams," Bank of America failed to disclose that would delay and did fail to process the PPP loan applications of Plaintiff and the Class because they "[did] not proactively deliver or send documents to our Financial Centers or banking teams" or via IntraLinks Exchange that were not specifically requested by Bank of America.

- By stating "Small Business clients with a business lending and a business deposit relationship at Bank of America [are] eligible to apply for the Paycheck Protection Program through our bank," Bank of America failed to disclose that being a "Small Business client[] with a business lending and a business deposit relationship at Bank of America[,]" was not the only requirement that to "be eligible to apply for the Paycheck Protection Program through our bank" but that PPP loan applications of equal to or less than $150,000 would not be processed, approved and funded on a "first-come, first-served" basis and would instead be processed, approved and funded behind Bank of America's PPP loan applications greater than $150,000.

- By stating that we required and Plaintiff and the Class qualified because they had "a pre-existing business lending and business deposit relationship with Bank of America, as of February 15, 2020," Bank of America failed to disclose that being a "a pre-existing business lending and business deposit relationship with Bank of America, as of February 15, 2020" was not the only requirement that to "be eligible to apply for the Paycheck Protection Program through our bank" but that PPP loan applications of equal to or less than $150,000 would not be processed, approved and funded on a "first-come, first-served" basis and would instead be processed, approved and funded behind Bank of America's PPP loan applications greater than $150,000.

- By stating that Plaintiff's and the Class' submission of a PPP loan application to Bank of America "[would be] the best and fastest method for applying for federal relief, based on the U.S. Treasury requirements and guidance," Bank of America failed to disclose that PPP loan applications of equal to or less than $150,000 would not be processed, approved and funded on a "first-come, first-served" basis and would instead be processed, approved and funded behind Bank of America's PPP loan applications greater than $150,000.

- By stating that we required and Plaintiff and the Class qualified because they were "Clients with existing relationships have the established accounts and underwriting verifications in place [that would] allow Bank of America to help provide the quickest access to the relief funds," Bank of America failed to disclose that PPP loan applications of equal to or less than $150,000 would not be processed, approved and funded on a "first-come, first-served" basis

and would instead be processed, approved and funded behind Bank of America's PPP loan applications greater than $150,000.

- By stating that we required and Plaintiff and the Class qualified because "At Bank of America, the federal Paycheck Protection Program will be administered online only," Bank of America failed to disclose that Defendants were prioritizing PPP loan applications of greater than $150,000 by allowing others to "deliver or send documents to our Financial Centers or banking teams" and/or submit applications before April 3rd and/or were using IntraLinks Exchange to prioritizing PPP loan applications of greater than $150,000 for faster PPP loan processing before processing the PPP loan applications of equal to or less than $150,000.

- By stating that we required Plaintiff and the Class "Apply for the federal Paycheck Protection Program at www.bankofamerica.com/SBResources beginning on Friday, April 3rd," Bank of America failed to disclose that Defendants were prioritizing PPP loan applications of greater than $150,000 by allowing others to "deliver or send documents to our Financial Centers or banking teams" and/or submit applications before April 3rd and/or were using IntraLinks Exchange to prioritizing PPP loan applications of greater than $150,000 for faster PPP loan processing before processing the PPP loan applications of equal to or less than $150,000 .

- By stating that "Bank of America is working with IntraLinks Exchange to gather your documents. That is our standard process, and we are using it to expedite this Small Business Administration program," Bank of America failed to disclose that Bank of America was not using "IntraLinks Exchange ... to expedite this Small Business Administration program" but instead was using IntraLinks Exchange to prioritizing PPP loan applications of greater than $150,000 for faster PPP loan processing before processing the PPP loan applications of equal to or less than $150,000.

- By stating that "Once you've uploaded the required information, Bank of America will begin processing your application so we can submit it to the Small Business Administration for approval," Bank of America failed to disclose that Defendants were prioritizing PPP loan applications of greater than $150,000 by allowing others to "deliver or send documents to our Financial Centers or banking teams" and/or were using IntraLinks Exchange to prioritizing PPP loan applications of greater than $150,000 for faster PPP loan processing before processing the PPP loan applications of equal to or less than $150,000.

- By stating that "Once you've uploaded the required information, Bank of America will begin processing your application so we can submit it to the Small Business Administration for approval," Bank of America failed to disclose that PPP loan applications of equal to or less than $150,000 would not be processed, approved and funded on a "first-come, first-served" basis and would instead be processed, approved and funded behind Bank of America's PPP loan applications greater than $150,000.

- By stating that "Once you've uploaded the required information, Bank of America will begin processing your application so we can submit it to the Small Business Administration for approval," Bank of America failed to disclose that it had no intention of processing, approving and funding PPP loan applications of equal to or less than $150,000 on a "first-come, first-served" basis, and instead intended to flag PPP loan applications of equal to or less than $150,000 as having missing or incomplete documentation or needing documentation not previously requested by Bank of America or requesting documentation be re-submitted to Bank of America via IntraLinks Exchange as an excuse not to process, approve and fund PPP loan applications of equal to or less than $150,000 on a "first-come, first-served" basis.

44. Had Bank of America informed Plaintiff and the Class of the truth, then Plaintiff and the Class would have submitted their PPP applications to other lending institutions that were processing applications on a first come, first served basis.

45. By prioritizing those PPP applications for larger amounts first that would earn them the highest origination fees rather than processing PPP loan applications on a "first come, first served" basis as required by U.S. Treasury guidance, Defendants enriched themselves at the expense of American taxpayers, undercut the intent of Congress and the Senate, undercut the dollar-per-dollar effectiveness of the CARES Act itself, and caused irreparable harm to countless small businesses and workers who actually needed the temporary funding of the PPP loans to make payroll, retain their employees, and stay afloat. As a result of their secret and concealed lending prioritization practices of processing PPP loan applications for larger amounts first before processing true "small business" PPP applications equal to or less than $150,000, Bank of America—along with other banks—stood to received nearly $10 billion in fees for loans approved by April 16, 2020 (the day when it was reported that PPP had been depleted[16]), while Plaintiff and the Class got nothing.

46. On April 26, 2020, it was reported that under the PPP's "lax" rules, "more than 200 publicly traded companies to obtain loans totaling more than $750 million."[17] On May 4, 2020, it was reported that "One week after the Paycheck Protection Program began backing a second round of small-business relief loans, $175 billion of the program's $310 billion in remaining funding has been committed, according to the Treasury Department and Small Business Administration."[18] Furthermore, news reports and Bank of America's own press releases issued after April 16, 2020 (the day after that PPP had first been depleted),

---

[16] "When frozen on Thursday, [April 16, 2020,]the PPP had allocated some $339 billion of the $349 billion set aside for small businesses. According to a Senate aide familiar with the matter, the SBA told lawmakers that it needed the remaining $10 billion to pay fees it agreed to give to lenders involved in the program." (https://www.pbs.org/newshour/politics/it-took-13-days-for-the-paycheck-protection-program-to-run-out-of-money-what-comes-next).

[17] (https://www.nytimes.com/2020/04/26/business/ppp-small-business-loans.html).

[18] (https://www.nytimes.com/2020/05/04/business/live-stock-market-coronavirus.html?action =click&pgtype=Article&state= default&module=styln-coronavirus-markets&variant=show®ion= MID_MAIN_CONTENT&context=storyline_updates_business#link-689f0dfe).

demonstrates that Defendants received thousands of PPP applications of different amounts and chose to prioritize applications for PPP loans greater than $150,000, rather than processing all applications on a first-come, first-served basis.  On May 4, 2020, Bank of America's own press release reported "Of the SBA applications submitted to date:

- 98% are for companies with fewer than 100 employees.
- 76% are for companies with fewer than 10 employees.
- 93% are for less than $350,000.
- 78% are for less than $100,000."

However, while, as reported on April 6, 2020, that "The bank confirmed that it has received applications from 177,000 small businesses for a total of $32.6 billion in financing,"[19] the April 16 data reported by the SBA for all lenders demonstrates that Defendants chose to prioritize PPP applications with higher loan amounts, rather than processing all applications on a first-come, first-served basis by reporting that the average size of approved loans originated from the top ten PPP lenders with highest approved dollars, such as Bank of America, was $339,707, or 54% higher than the "Overall average loan size [of] $206K" of all PPP lenders, and Bank of America's own press release reported that as of May 4, 2020, the bank had only funded 141,428 loans for a total of $12,978,794,503, achieved primarily because, as reported on May 4, 2020 in its own press release, "Since the SBA reopened on April 27, Bank of America: ... Is the number one SBA lender in the second round of funding."

**COMMON AND TYPICAL FACTUAL ALLEGATIONS OF PLAINTIFF AND THE CLASS**

47.    On or about April 3, 2020, Plaintiff submitted a complete, thorough, and timely application to Bank of America to obtain a PPP loan equal to or less than $150,000 and was instructed by Bank of America to make a PPP loan application via IntraLinks Exchange, maintained, configured and operated by Intralinks.  After submitting the PPP loan application and submitting complete, thorough, and timely documentation, Plaintiff waited to get funded. While Plaintiff waited to get funded, it made strategic business decisions, and took other steps in reliance on Bank of America's representations that it would process Plaintiff's application consistent with its representations.

48.    Defendants did not process Plaintiff's and the Class' PPP loan applications consistent with

---

[19] (https://www.cnbc.com/2020/04/06/bank-of-america-sees-booming-rescue-loan-demand-with-applications-for-nearly-10percent-of-allotment.html)

its representations, including either a first-come, first-served basis or "as quickly as possible;" instead, Defendants moved high dollar applications from large borrower customers to the "front of the line" in order to maximize their origination fees on their PPP loans at Plaintiff's and the Class' and the U.S. taxpayers' expense, and to protect its large borrower customers from defaulting on their other loans with Bank of America.

49. Despite the fact that Defendants did not process the applications in either a first-come, first-served basis or as quickly as possible, Defendants made numerous affirmative representations as set forth above to Plaintiff, the Class, and the public that they were in fact prioritizing loans to small businesses and processing applications on a first come, first served basis. They made these affirmative representations to advance their own financial benefit to the detriment of Plaintiff, the Class, and the public. Defendants tried to cultivate public good will and to communicate they were following the law, when in fact the process was rigged so that the bank could maximize its origination fees and to protect its large borrower customers from defaulting on their other loans with Bank of America.

50. Plaintiff reasonably relied on Defendants' affirmative representations, communications, and advertising in making the choice to apply for a PPP loan through Defendants, not knowing that, contrary to those representations, Defendants would prioritize large borrowers and PPP loan applications greater than $150,000, making it less likely that Plaintiff and the Class would be able to obtain a loan through the PPP. As a result of their reliance on Defendants' representations, Plaintiff and the Class suffered economic harm. Had Plaintiff and the Class known that Defendants large borrowers and PPP loan applications greater than $150,000, Plaintiff and the Class would not have applied for a PPP loan with Defendants.

51. As a result of the conduct of Defendants, Plaintiff and the Class suffered financial harm, wrongfully lost the time value of those available PPP funds, lost access to capital in a difficult economic time, could not make payroll, and was forced to lay off talented and hardworking employees that the company had invested valuable training resources in, and generally lost economic opportunities to conduct business due to lack of operating capital.

## ADDITIONAL ALLEGATIONS OF PLAINTIFF

52. On or about March 25, 2020, Plaintiff became aware that the CARES Act had been signed into law. Plaintiff, knowing that its business would be seriously impacted by the COVID-19 crisis and the

stay-at-home or shelter-in-place orders, sought to obtain a PPP loan through a qualified financial institution.

53. An officer of Plaintiff scheduled an appointment on Bank of America's online portal and receive a confirmation (no. XXXX0964) for an appointment on March 26, 2020 at 2:30 p.m. to 3:30 p.m. with Bank of America employee, Young Sun Lee, Officer: Small Business Consultant, at Bank of America branch office located at 9260 Mira Mesa Blvd., San Diego, California 92126. At the meeting, Plaintiff's agent discussed Plaintiff's desire and need to apply for and to obtain a PPP loan. Ms. Young stated that she was moving and would not be in the office for a week, but that Bank of America employee, Nabiat Shibeshi, Officer: Small Business Consultant, would assist Plaintiff in obtaining a PPP loan.

54. On April 3, 2020, Plaintiff, like all Class members, received an email from Bank of America on how to apply for a PPP loan with Bank of America stating the following:

> **From:** "Bank of America" <customerservice@emcom.bankofamerica.com>
> **Subject: What you need to know about financial assistance under the Paycheck Protection Program**
> **Date:** April 3, 2020 at 6:58:49 AM PDT
> **To:** <songbledsoe@me.com>
> **Reply-To:** "Bank of America" <reply-fe9e16717060057d71-32_HTML-402440031-73895-3155@emcom.bankofamerica.com>
>
> Bank of America expands support for clients with new Paycheck Protection Program
>
> Over the past several weeks, Bank of America has been providing support to our customers and clients through our enhanced Client Assistance Program.
>
> In addition, beginning April 3rd, our Small Business clients may also be eligible for financial relief through the federal Paycheck Protection Program that is being introduced as a result of the Coronavirus Aid, Relief, and Economic Security (CARES) Act.
>
> The Paycheck Protection Program is a federal relief program established by Congress and implemented by the U.S. Treasury Department and the Small Business Administration (SBA) with rules, requirements, protocols and processes that all participating banks, including Bank of America, must follow.
>
> In order to ensure an orderly flow of these government-provided funds, we will follow the intent of the U.S. Treasury guidance, including what has been posted at the U.S. Treasury website, that small businesses that plan to apply should do so with their current business loan provider.
>
> - Small Business clients with a business lending and a business deposit relationship at Bank of America are eligible to apply for the Paycheck Protection Program through our bank. A client's pre-existing lending relationship with us may be a Bank of America Business Credit Card, small business line of credit or business loan.
> - Small Business owners who do not have both a business lending and business deposit relationship with us should contact their current business loan provider as soon as possible, if they plan to apply for the federal Paycheck Protection Program. This is

the best and fastest method for applying for federal relief, based on the U.S. Treasury requirements and guidance.

- All applications, information and correspondence about the Paycheck Protection Program at Bank of America will occur online and through email, including the application process, submission of required documents, and follow up correspondence.

Eligible clients who plan to apply for the Paycheck Protection Program loan should be aware of the following important items:

You must have a pre-existing business lending and business deposit relationship with Bank of America, as of February 15, 2020. A Business Credit Card, line of credit or loan may be the lending product used.

1. At Bank of America, the federal Paycheck Protection Program will be administered online only.
2. Clients must have a Business Online Banking account. If you do not currently have a Business Online Banking account you must sign up for Business Online Banking as soon as possible.
3. Apply for the federal Paycheck Protection Program at www.bankofamerica.com/SBResources beginning on Friday, April 3rd.
4. After completing the application process, you will receive online confirmation of the submission.
5. Bank of America will process your application as soon as possible.
6. We will contact you with next steps and to collect any required documents. Do not proactively deliver or send documents to our Financial Centers or banking teams.
7. You will be notified of the status of your loan application through email communications.
8. Information about your application status will NOT be available through our Financial Centers or Contact Centers - due to the nature of this loan process and the steps involved.
9. To prepare for your application process, review requirements listed on the U.S. Treasury website. These include:

- 2019 Payroll - total payroll for full year 2019, by employee, as reported to the IRS
- 2019 Independent Contractor Costs - Listing of 1099's-MISC for 2019 independent contractors, by person, as reported to the IRS (Note: Do NOT include 1099's for services)
- Payroll report as of February 15, 2020 or closest date after that date, by employee
- Other information

Under the CARES Act, the federal Paycheck Protection Program includes the following components:

- The program will be available to businesses with 500 or fewer employees to help with payroll, rent, utilities, healthcare costs and more.
- Loans can be for up to two months of your average monthly payroll costs from the last year plus an additional 25% of that amount. The loan amount is capped at $10 million.
- Loans will be forgiven up to the loan amount for a borrower's payroll, rent, mortgage, and utility costs incurred and paid during an eight-week period after a loan is originated.
- Loan forgiveness will be reduced to the extent of a) any reduction in employee headcount during this period (as compared to the prior year), and b) any reduction in pay of an employee by more than 25% (as compared to their prior year compensation). Borrowers that rehire workers will not be penalized for paying them less when they are rehired.
- The SBA also expanded Emergency Economic Injury Disaster Loans.

Bank of America business lending relationships include small business, commercial or

corporate credit cards, conventional business loan or lease, business lines of credit, business auto loans, practice solutions loans, trade and asset-based loans. Clients with these existing relationships have the established accounts and underwriting verifications in place to allow Bank of America to help provide the quickest access to the relief funds and help the U.S. government prevent fraud in the process. There are additional options that may be sources of support for small business owners:

- Other Small Business Administration relief programs: The SBA is providing special financing options that small business owners can access via www.SBA.gov/disaster.
- Community Development Financial Institutions (CDFIs): CDFIs, also known as local loan centers, are small and typically not-for-profit providers of loans. Bank of America is the largest investor in CDFIs in the United States - with more than $1.6 billion in loans and investments in over 250 CDFIs. On Monday, March 30, Bank of America announced that it will provide up to $250 million in capital to community development financial institutions (CDFIs) by funding loans through the Paycheck Protection Program. In addition, Bank of America will provide up to $10 million in philanthropic grants to help fund the operations of CDFIs. Find a CDFI near you via the CDFI list and locator tool.
- Other small business lending providers: If you have a lending relationship at another bank, working with your current provider will be the best and fastest approach.
- SBA 7(a) lenders: find a local SBA lender via https://www.sba.gov/funding-programs/loans.

Bank of America continues to provide additional support to our customers and clients through our enhanced Client Assistance Program. Learn more

Sincerely,

Sharon Miller
Head of Small Business

Please do not reply to this email, as email replies are not monitored.

You're receiving this servicing email as part of your existing relationship with us.

55.    Thereafter, an officer of Plaintiff then scheduled an appointment on Bank of America's online portal and receive a confirmation (no. XXXX9990) for an appointment on April 3, 2020 at 2:30 p.m. to 3:30 p.m. with Bank of America employee, Nabiat Shibeshi, Officer: Small Business Consultant, at Bank of America branch office located at 11855 Carmel Mountain Rd., San Diego, California 92128. An officer of Plaintiff then sent an email to Ms. Shibeshi asking for help in obtaining a PPP loan.  Bank of America's employee did not respond to Plaintiff's email and their scheduled appointment for April 3, 2020 was cancelled on reliance upon Bank of America's public statement that "At Bank of America, the federal Paycheck Protection Program will be administered online only" as its standard process.  Contrary to its stated standard process, Bank of America employees instead, as instructed by their superiors and managers, met with and assisted only Bank of America's large borrower customers to apply for and to obtain PPP loans.

56. Plaintiff met all of the requirements for a PPP loan as set forth in Bank of America's April 3, 2020 email.

57. On April 3, 2020, in response and in reliance upon Bank of America's April 3, 2020 email, Plaintiff submitted a complete PPP loan application to Bank of America to obtain a PPP loan equal to or less than $150,000 as instructed at www.bankofamerica.com/SBResources in reliance upon Bank of America's representations that:

- "we will follow the intent of the U.S. Treasury guidance, including what has been posted at the U.S. Treasury website, that small businesses that plan to apply should do so with their current business loan provider."
- "We will contact you with next steps and to collect any required documents. Do not proactively deliver or send documents to our Financial Centers or banking teams."
- we required and Plaintiff qualified because it was "Small Business client[] with a business lending and a business deposit relationship at Bank of America[,]" and therefore, "[Plaintiff was] eligible to apply for the Paycheck Protection Program through our bank."
- we required and Plaintiff qualified because it had "a pre-existing business lending and business deposit relationship with Bank of America, as of February 15, 2020."
- Plaintiff's submission of a PPP loan application to Bank of America "[would be] the best and fastest method for applying for federal relief, based on the U.S. Treasury requirements and guidance."
- we required and Plaintiff qualified because it was a "Client[] with [an] existing relationship[] have the established accounts and underwriting verifications in place [would] allow Bank of America to help provide the quickest access to the relief funds ...."
- "At Bank of America, the federal Paycheck Protection Program will be administered online only."
- "Apply for the federal Paycheck Protection Program at www.bankofamerica.com/SBResources beginning on Friday, April 3rd."

58. On April 6, 2020, Plaintiff received an email confirmation that Bank of America had received its PPP loan application stating the following:

> **From:** "Bank of America" <welcome@intralinks.com>
> **Subject: Paycheck Protection Program: We're ready to receive your documents**
> **Date:** April 6, 2020 at 1:36:46 PM PDT
> **To: [REDACTED]**
> **Reply-To:** Bank of America Payroll Protection Program <Smallbusinessdocuments@bankofamerica.com>
>
> Thank you for submitting your application for the Paycheck Protection Program to Bank of America
>
> You recently received your welcome letter and this is the next step in the application process - submitting the required documents.
>
> Bank of America is working with IntraLinks Exchange to gather your documents. That is our standard process, and we are using it to expedite this Small Business Administration program. We'll need you to upload your documentation to IntraLinks confidential and secure website. Once you've uploaded the required information, Bank of America will begin

processing your application so we can submit it to the Small Business Administration for approval.

**What you need to do**
Log into IntraLinks and upload the required documents:
• Payroll processor records for the period including February 15, 2020
• Payroll tax filings for 2019
• For independent contractors; Form 1099-MISC for 2019
• For sole proprietorship or self-employed; income and expenses, i.e., Profit & Loss Statement
• Other documentation to support payroll expenses such as bank records

**How to Login**
• You can log into your IntraLinks Exchange using the following link: **[REDACTED]**
• Your IntraLinks ID is: **[REDACTED]**
• If you already have an IntraLinks password, and don't remember, click here.
• Don't use your Bank of America Online Banking password.

**What you need to know**
• Bank of America will review uploaded documents and contact you if further clarification or documentation is necessary
• Bank of America will process your loan application with the Small Business Administration as quickly as possible
• Bank of America will email you with the status once we receive a decision from the Small Business Administration
• Please do not deliver or send documents to Bank of America Financial Centers or banking teams.
• Information about your application status will NOT be available through Bank of America's Financial Centers or Contact Centers

Thank you for being a valued client of Bank of America.

59.    Importantly, Bank of America's April 6, 2020 email did request from Plaintiff, or any other Bank of America's PPP loan applicant, either (1) copies of Payroll tax filings for 2020, or (2) specifically request copies of IRS Form 940 or IRS Form 941 for 2019 or 2020.

60.    In response to Bank of America's April 6, 2020 email and as confirmed on the IntraLinks Exchange, Plaintiff, on April 6, 2020, uploaded all requested and necessary documentation on the IntraLinks Exchange as instructed by Bank of America, including ADP Payroll processor records for the period including February 15, 2020; Payroll tax filings for 2019; the PPP_Addendum_BofA; April 6 CARES Loan Request Package; and PPP Document Requirements.

61.    On April 6, 2020, Plaintiff uploaded all requested and necessary documentation on the IntraLinks Exchange as instructed by Bank of America in response and in reliance upon Bank of America's April 6, 2020 email, in reliance upon Bank of America's representations that:

- "Bank of America is working with IntraLinks Exchange to gather your documents. That is our standard process, and we are using it to expedite this Small Business Administration program."

- "Once you've uploaded the required information, Bank of America will begin processing your application so we can submit it to the Small Business Administration for approval."

- "Bank of America will process your loan application with the Small Business Administration as quickly as possible."

- "We'll need you to upload your documentation to IntraLinks confidential and secure website."

- "Bank of America will review uploaded documents and contact you if further clarification or documentation is necessary"

- "Please do not deliver or send documents to Bank of America Financial Centers or banking teams."

62. On or about April 6, 2020, an officer of Plaintiff made a service request on Bank of America's online portal requesting confirmation of Bank of America's receipt of Plaintiff's documents uploaded on the IntraLinks Exchange on April 6, 2020. On April 8, 2020, Plaintiff received an voicemail message from Bank of America's employee requesting Plaintiff call him in response to confirmation request. An officer of Plaintiff later that day returned the call to the Bank of America's employee, and during their telephone conversation, the Bank of America's employee confirmed that Bank of America had received Plaintiff's PPP documentation on the IntraLinks Exchange, did not request any additional information from Plaintiff, and did not tell Plaintiff that its PPP loan application was insufficient or that Plaintiff's documentation submitted to Bank of America via Intralinks Exchange was missing or incomplete. However, Plaintiff got nothing: no approval, no funding of its PPP loan application.

63. On April 19, 2020, after it was widely reported that the first round had run out of funding on April 16, 2020,[20] Bank of America sent an email to Plaintiff stating in relevant part: "After careful review, the following must be resolved in order to continue processing your application. **Checked boxes indicate missing or incomplete document that must be submitted to Bank of America via Intralinks Exchange:**" and, contrary to the representation made by Bank of America's employee during his April 8, 2020 telephone call with Plaintiff's officer, checked a single box stating "2020 Tax form 941 or Payroll

[20] (https://www.cnbc.com/2020/04/17/this-government-loan-program-has-run-dry-these-people-lost-out.html).

processor records for the period between Feb 14-29, 2020," documents that were not requested in Bank of America's April 6, 2020 email sent to Plaintiff or requested by Bank of America's employee during his April 8, 2020 telephone call with Plaintiff's officer. On April 20, 2020, Plaintiff uploaded ADP Form 941 for the period covering "Feb 14-29, 2020." However, Plaintiff again got nothing: no approval, no funding of its PPP loan application.

64. On April 28, 2020, Bank of America sent an email to Plaintiff stating in relevant part: "After careful review, the following must be resolved in order to continue processing your application. **Checked boxes indicate missing or incomplete document that must be submitted to Bank of America via Intralinks Exchange:**" and, contrary to the representation made in Bank of America's April 19, 2020 email and by Bank of America's employee during his April 8, 2020 telephone call with Plaintiff's officer, checked a single box stating "Paycheck Protection Program Loan Amount Template (located in your Bank of America IntraLinks Instructions folder)." However, Plaintiff had already uploaded "Paycheck Protection Program Loan Amount Template" on April 6, 2020. Moreover, on April 28, 2020, when it was reported that over 100,000 PPP loan applications were processed by the SBA,[21] Plaintiff again got nothing: no approval, no funding of its PPP loan application.

**FIRST CLAIM FOR RELIEF**
**(Unlawful, Fraudulent and Unfair Business Acts and Practices in Violation of California Business & Professions Code §17200, *et seq*.)**
(Against All Defendants)

65. Plaintiff incorporates by reference to all preceding paragraphs as if fully set forth here and further alleges as follows:

66. The acts, misrepresentations, omissions, practices, and non-disclosures of each Defendant as alleged herein constituted unlawful, fraudulent and unfair business acts and practices within the meaning of California Business & Professions Code §§ 17200, *et seq*. Specifically, Defendants' acts, misrepresentations, omissions, practices, and non-disclosures has violated Business & Professions Code §§ 17200, *et seq*. by subverting both the process and the intent of PPP loans through prioritizing large borrowers to the detriment of the "small business" applicants the funds were intended to support. Further,

[21] (https://edition.cnn.com/2020/04/28/politics/small-business-loan-program-second-round-state-of-play /index.html).

Defendants made misrepresentations and omissions to their PPP applicants and the public about the offer, process and funding of PPP loans which were false, misleading and/or had a tendency to deceive the reasonable consumer to believe that Defendants would process and fund PPP loan applications equal to or less than $150,000 fairly, when they would not, Defendants would process and fund PPP loan applications on a "first-come, first-served" based on the PPP program criteria, when they would not, and failed to disclose that the PPP loan applications of equal to or less than $150,000 would instead be processed, approved and funded behind Bank of America's PPP loan applications greater than $150,000 and Defendants' large borrower applications. Defendants made these misrepresentations and omissions induced Plaintiff and the Class to apply with Defendants and caused Plaintiff to rely upon and caused Plaintiff to falsely believe that Defendant would process and fund Plaintiff's PPP loan application of less than $150,000 fairly, when they would not, Defendants would process and fund Plaintiff's PPP loan application on a "first-come, first-served" basis, when they would not, and failed to disclose that Plaintiff's PPP loan application of equal to or less than $150,000 would instead be processed, approved and funded behind Bank of America's PPP loan applications greater than $150,000 and Defendants' large borrower applications.

67. By the aforementioned business acts or practices, each Defendant has engaged in "unlawful" business acts and practices in violation of (i) FTCA which prohibits "unfair or deceptive acts or practices in or affecting commerce" (15 U.S.C. § 45(a)(1)) and specifically prohibits false advertisements. 15 U.S.C. § 52(a); and prohibits "unfair or deceptive acts or practices in or affecting commerce" (15 U.S.C. § 45(a)(1)) and specifically prohibits false advertisements. 15 U.S.C. § 52(a); (ii) Small Business Administration Regulations that govern the PPP funds, specifically SBA Interim Final Rule § m. [Docket No. SBA-2020-0015] 13 CFR Part 120, Business Loan Program Temporary Changes; and Paycheck Protection Program, RIN 3245-AH34, mandated that they funds be distributed "first come, first served."Plaintiff reserves the right to allege other violations of law which constitute unlawful acts or practices.

68. By the aforementioned business acts or practices, each Defendant has also engaged in "fraudulent" business acts and practices by each Defendant's dissemination of marketing materials and advertisements used for the offer of services in California. As set forth herein, the marketing materials and advertisements used for the offer of the aforementioned services in California were false, misleading and/or had a tendency to deceive the reasonable consumer to believe that Defendants would process and fund PPP

loan applications of equal to or less than $150,000 fairly, when they would not, Defendants would process and fund PPP loan applications on a "first-come, first-served" basis, when they would not, and failed to disclose that the PPP loan applications of equal to or less than $150,000 would instead be processed, approved and funded behind Bank of America's PPP loan applications greater than $150,000 and Defendants' large borrower applications.

69.    By the aforementioned business acts or practices, each Defendant has also engaged in "unfair" business acts or practices in that the harm caused by each Defendant's failure to fairly process and fund PPP loan applications of Plaintiff and the Class loan applications on a "first-come, first-served" based on the PPP program criteria, outweighs the utility of such conduct and such conduct offends public policy, is immoral, unscrupulous, unethical, deceitful and offensive, and causes substantial injury to Plaintiff and the Class.

70.    The aforementioned unlawful, fraudulent and unfair business acts or practices conducted by Defendants have been committed in the past and continues to this day.  Defendants have failed to acknowledge the wrongful nature of their actions.  Defendants have not corrected or publicly issued individual and comprehensive corrective notices to Plaintiff and the Class.

71.    As a result of the conduct described above, Plaintiff and the Class have no other adequate remedy of law in that absent injunctive relief from the Court, Defendants are likely to continue to injure Plaintiff and the Class, and thus engendering a multiplicity of judicial proceedings.

72.    Pursuant to Business & Professions Code § 17203, Plaintiff and Class members seek an order of this Court for equitable and/or injunctive relief in the form of requiring Defendants to correct their illegal conduct that is necessary and proper to prevent Defendants from repeating their illegal and wrongful practices as alleged above and to maintain the confidentiality of the information of Plaintiff and the Class already obtained by Defendants way of their illegal and wrongful practices set forth above. Pursuant to Business & Professions Code § 17203, Plaintiffs and the Class further seek an order of this Court for equitable and/or injunctive relief in the form of requiring each Defendant to publicly issue comprehensive corrective notices.  Because this case is brought for the purposes of enforcing important rights affecting the public interest, Plaintiff and the Class also seek the recovery of attorneys' fees and costs in prosecuting this action against Defendants under Code of Civil Procedure § 1021.5 and other applicable law.

**SECOND CLAIM FOR RELIEF**
**(Fraudulent Concealment)**
(Against all Defendants)

73.    Plaintiff incorporates by reference to all preceding paragraphs as if fully set forth here and further alleges as follows:

74.    Defendants made misrepresentations and omissions to Plaintiff, the Class and the public about their process and funding of PPP loans which were false, misleading and/or had a tendency to deceive the reasonable consumer to believe that Defendants would process and fund PPP loan applications equal to or less than $150,000 fairly, when they would not, Defendants would process and fund PPP loan applications on a "first-come, first-served" based on the PPP program criteria, when they would not, and failed to disclose that the PPP loan applications of equal to or less than $150,000 would instead be processed, approved and funded behind Bank of America's PPP loan applications greater than $150,000 and Defendants' large borrower applications, as detailed above.  Each Defendant knew the true facts regarding the promotion and offer of PPP loans and failure to disclose to that Defendants would process and fund PPP loan applications of less than $150,000 fairly, when they would not, Defendants would process and fund PPP loan applications on a "first-come, first-served" basis, when they would not, and failed to disclose that the PPP loan applications of equal to or less than $150,000 would instead be processed, approved and funded behind Bank of America's PPP loan applications greater than $150,000 and Defendants' large borrower applications, as detailed above, and either knew or recklessly disregarded the potential ramifications of disclosing such defect to Plaintiff and the Class but failed and/or refused to do so, fraudulently concealing and/or omitting the true facts.

75.    Plaintiff and the Class, unaware of Defendants' concealment or suppression of said material facts, were induced to apply for PPP loans with Defendants and caused them to rely upon and falsely believe that Defendant would process and fund their PPP loan applications of equal to or less than $150,000 fairly, when they would not, Defendants would process and fund their PPP loan applications on a "first-come, first-served" basis, when they would not, and concealed from them the true facts that their PPP loan application of equal to or less than $150,000 would instead be processed, approved and funded behind Bank of America's PPP loan applications greater than $150,000 and Defendants' large borrower applications. Plaintiff and the Class could not have discovered, in the exercise of reasonable diligence, Defendants' failure

to disclose the true facts concerning about the offer, process and funding of PPP loans and Defendants' failure to fund PPP loan applications submitted by Plaintiff and the Class. Had Plaintiff and the Class known of the concealed facts, they would not have made applications for PPP loans with Defendants or would have applied with other lenders.

76. As a proximate result of the foregoing omissions and failures to disclose, Plaintiff and the Class have suffered damages in an amount to be proven at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests of this Court the following relief, on behalf of itself and all others similarly situated:

1. That the Court issue an Order certifying this action be certified as a class action on behalf of the proposed plaintiff class, appointing the named Plaintiff as a representative of all others similarly situated, and appointing Plaintiff's attorneys, as counsel for members of the proposed plaintiff class;

2. Equitable and/or injunctive relief in the form of an order requiring Defendants to correct their illegal conduct that is necessary and proper to prevent Defendants from repeating their illegal and wrongful practices, to maintain the confidentiality of the information of Plaintiff and the Class already obtained by Defendants way of their illegal and wrongful practices, and requiring Defendants to publicly issue comprehensive corrective notices;

3. General damages according to proof;

4. Compensatory damages according to proof;

5. Consequential damages according to proof;

6. Punitive damages according to proof;

7. Prejudgment and post judgment interest as provided by statute;

8. Attorneys' fees, expenses, and costs of this action pursuant to statute; and

9. Such further relief as this Court deems necessary, just, and proper.

Dated: May 5, 2020

KEEGAN & BAKER, LLP

s/ *Patrick N. Keegan*
Patrick N. Keegan, Esq.
Attorney for Plaintiff

**DEMAND FOR JURY TRIAL**

Plaintiff and the Class hereby demand a jury trial on all claims for relief and claims with respect to which they have a right to a jury trial.

Dated: May 5, 2020

KEEGAN & BAKER, LLP

s/ *Patrick N. Keegan*
Patrick N. Keegan, Esq.
Attorney for Plaintiff